(159 P.3d 209)
No. 95,970

STATE OF KANSAS, *Appellee*, v. KEVIN BURTON, *Appellant*.

—

Opinion filed June 8, 2007.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Jeffrey E. Evans,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Kevin Burton appeals his conviction for possession of marijuana with a previous conviction. The principal issue before us is whether the trial court erred in denying Burton's motion to suppress evidence. In his appeal, Burton raises two issues: (1) whether the police officer feared for his safety, justifying a pat-down search of Burton; and (2) whether the trial court erred in scoring Burton's criminal history. Because we determine that the officer was not justified in making a pat-down search of Burton, we reverse and remand with directions to grant Burton's motion to suppress evidence. We need not consider Burton's challenge to his criminal history based on our decision to reverse this matter.

Officer Jessie Cornwell, a narcotics and gang investigator, received a call at approximately 11:30 p.m. from dispatch concerning a disturbance at the Trail Motel in Wichita. Dispatch indicated that the disturbance involved a white woman and a black man wearing a gray sweatshirt and black vest. These two individuals were last seen walking east from the motel. Three to four minutes later, Cornwell saw two people matching the description given by dispatch walking just east of Broadway on Indianapolis, not far from the motel. Cornwell recognized the black male as Burton from prior experience. Cornwell stopped his patrol car to talk to Burton, while Cornwell's partner talked to the female.

As Cornwell approached Burton, he asked Burton if he had any weapons on him and told him he was going to pat him down. While patting down Burton, Cornwell also asked Burton if he had anything illegal on him. Burton replied that he had a bag of weed in his pocket. Cornwell then asked Burton for consent to search his pocket. Burton consented, and Cornwell found a small bag containing a green botanical substance that Cornwell believed to be marijuana in Burton's front pocket. As a result, Cornwell arrested Burton. At the jail, Cornwell read Burton his *Miranda* rights. See *Miranda v. Arizona,* 385 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966). When Cornwell asked

Burton whether he understood those rights, Burton spontaneously said, "The weed's mine." Cornwell then asked Burton if he could question him further, but Burton invoked his right not to answer any more questions.

The State later charged Burton with one count of possession of marijuana after a prior conviction in violation of K.S.A. 65-4162(a). Before trial, Burton moved to suppress his statements and the marijuana evidence. At the hearing on the motion to suppress, Burton argued that Cornwell did not have reasonable suspicion to conduct a *Terry* stop and that Cornwell's investigation went outside the permissible scope of a *Terry* stop. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The trial court disagreed and denied the motion to suppress.

Burton and the State later entered into a bench trial stipulation. After a bench trial on stipulated facts, the trial court found Burton guilty of possession of marijuana after a prior conviction and ordered a presentence investigation (PSI) report.

The PSI report revealed that Burton had at least 39 prior convictions, placing him in a criminal history category of A. After overruling Burton's challenge to his criminal history score, the trial court pronounced him guilty of possession of marijuana after a prior conviction in violation of K.S.A. 65-4162(a). The trial court later granted Burton's motion for departure and sentenced him to 12 months' probation, with assignment to a community corrections residential program. The court imposed an underlying 42-month prison term and 12 months' postrelease supervision.

*Did the District Court Err in Denying Burton's Motion to Suppress?*

The State has the burden of establishing the lawfulness of the search and seizure. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003). Where, as here, the case was submitted on stipulated facts, the question of whether to grant or to deny a motion to suppress is a question of law subject to unlimited review. *State v. Jones*, 279 Kan. 71, 74, 106 P.3d 1 (2005).

Neither party disputes this case involved an investigatory stop governed by *Terry*, 392 U.S. 1, which permits stop and frisk searches under conditions codified in K.S.A. 22-2402 as follows:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, such officer may take and keep it until the completion of the questioning, at which time such officer shall either return it, if lawfully possessed, or arrest such person."

Although Burton challenged the basis for Cornwell's investigatory stop and detention at the suppression hearing, Burton seems to concede on appeal that Cornwell had the requisite reasonable suspicion required by K.S.A. 22-2402(1) to conduct a limited *Terry* stop. Burton, however, argues that the trial court should have granted his motion to suppress for two reasons. First, Burton maintains that the record was insufficient to establish compliance with K.S.A. 22-2402(2), that is, the evidence failed to show that Cornwell reasonably suspected that his personal safety required a *Terry* frisk for weapons. Second, Burton asserts that Cornwell improperly transformed the encounter from a weapons search into a general exploratory search for evidence of criminal activity. As a result, Burton maintains that the marijuana evidence and his statements should have been suppressed as fruit of the poisonous tree.

*The Frisk*

During a *Terry* stop, an officer is allowed to frisk the person seized for weapons if the officer "reasonably suspects that [his or her] personal safety requires it." K.S.A. 22-2402(2); see *State v. Hill*, 281 Kan. 136, 141, 130 P.3d 1 (2006). This court considers an officer's reasonable suspicion in light of the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981). *Terry* explains the nature of the suspicion that must be shown by the police:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations omitted.] And in determining whether the officer acted reasonably in such circumstances, due

weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation omitted.]" 392 U.S. at 27.

Burton argues that Cornwell's testimony that he knew Burton from " 'prior experience' " did not sufficiently establish reasonable suspicion to conduct a *Terry* frisk. The State responds that any potential error surrounding the patdown was harmless because no evidence was recovered from the patdown, but, nonetheless, the State maintains that the patdown was proper.

In support of his contention that Cornwell lacked reasonable suspicion to fear for his safety and, therefore, to frisk him for weapons, Burton cites to the following exchange between his counsel and Cornwell at the hearing on his motion to suppress:

"Q: Okay. So you approached Mr. Burton, you knew who he was and you started patting him down and asking him questions, is that correct?

"A: Yes.

"Q: At that point, you had no reason to fear for your safety, did you? Mr Burton was cordial?

"A: After I patted him down or before?

"Q: Before.

"A: Before?

"Q: Yes.

"A. I always do it for my safety before.

"Q: I'm asking you specifically with regard to this person.

"A: Yeah. I'm patting them down.

"Q: Sure. But do you have—did you observe anything that was threatening to you?

"A: He had on bulky clothing so I had no idea what he could have been having underneath his clothing or anything.

"Q: Did he display anything—

"A: He did not.

"Q: —in his actions?

"A: In plain view, no.

. . . .

"Q: Was he threatening to you?

"A: I have—I didn't know if he had any weapons or not. I was going to find out."

Burton argues that Cornwell's testimony indicates that he always pats down an individual for his safety. Thus, Burton maintains that Cornwell conducted an impermissible general, cursory search for weapons. Burton cites *Ybarra v. Illinois*, 444 U.S. 85, 93-94, 62 L.

Ed. 2d 238, 100 S. Ct. 338 (1979), *reh. denied* 444 U.S. 1049 (1980), for the proposition that "[n]othing in *Terry* can be understood to allow a generalized 'cursory search for weapons' [as the officers admittedly did in Ybarra's case] or, indeed, any search whatever for anything but weapons."

In conducting a *Terry* frisk, "the officer must have prior knowledge of facts *or* observe conduct of the person *or* receive responses to the limited interrogation authorized by [K.S.A. 22-2402(1)] which, in the light of his experience, would cause the officer to reasonably suspect that his personal safety requires such search." (Emphasis added.) *State v. Potter*, 246 Kan. 119, 122, 785 P.2d 989 (1990). Cornwell admittedly did not observe any conduct by Burton or the female that would have caused him to reasonably suspect a weapons frisk was necessary for his personal safety, and he had not yet conducted any limited interrogation of Burton concerning the disturbance.

To illustrate, near the scene of the reported disturbance, Cornwell saw Burton and a female walking just east of Broadway on Indianapolis. When Cornwell stopped them, he did not have any details about the disturbance or whether the disturbance involved any criminal activity. Moreover, the record of the dispatch indicated that the disturbance involved no injuries or weapons.

Although the trial court stated that the area of the disturbance was a high crime area, Cornwell failed to testify that the area was a high crime area. Significantly, the circumstances surrounding Cornwell's previous experience with Burton was not developed during the suppression hearing. An officer's previous encounter or experience with a suspect is often helpful in determining whether a frisk is necessary. For example, an officer's previous knowledge about a suspect may bring to light that the suspect is wanted for other offenses or that the suspect has a record for violence or a mental disorder. Nevertheless, Cornwell did not state that his prior experience with Burton caused him to suspect that Burton was armed and dangerous.

In *Terry*, the Court stated that a frisk may be made only when the officer has "reason to believe that he is dealing with an armed and dangerous individual." 392 U.S. at 27. Moreover, in *Ybarra*,

444 U.S. at 94, the Court stated that the narrow scope of the *Terry* doctrine "does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked." Here, Cornwell did not articulate any fear or concern for his safety. Moreover, Cornwell never developed a reasonable articulable suspicion that Burton was armed and dangerous. As a result, Cornwell was not justified in frisking Burton.

Nevertheless, the State argues that any potential error surrounding the pat-down search was harmless because no evidence was recovered from the pat-down search. The State contends that Cornwell was alerted to the marijuana not through the pat-down search, but by Burton's response to Cornwell's question of whether Burton had anything illegal on him.

There is no dispute that Cornwell asked Burton if he had anything illegal on him while he was conducting his *Terry* frisk for weapons. Cornwell testified that as he approached Burton, he did the following:

"First of all, I told him that I was going to pat him down. I started patting him down. While I'm patting him down—first of all, I ask if he has any weapons on him. I start patting him down. While I'm patting him down, I ask him if he has anything illegal on him."

As stated earlier, an officer may conduct a pat-down search when the officer is justified in believing that the person is armed and dangerous to the officer or others. *Terry*, 392 U.S. at 24. Nevertheless, this protective search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." 392 U.S. at 26; see *Minnesota v. Dickerson*, 508 U.S. 366, 373, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993); *State v. Waddell*, 14 Kan. App. 2d 129, 132-33, 784 P.2d 381 (1989). Here, during the pat-down search, Cornwell asked Burton if he had anything illegal on him. Burton stated that he had a bag of weed in his pocket. When Cornwell asked Burton for consent to remove the bag from his pocket, Burton consented.

In *State v. Schmitter*, 23 Kan. App. 2d 547, 557, 933 P.2d 762 (1977), this court, however, noted that such actions as previously mentioned by an officer "were clearly improper as *Terry* allows

only for a pat-down for weapons, not evidence . . . ." Here, Cornwell's inquiry about whether Burton had anything illegal on him transformed the encounter from a weapons search into an evidentiary probe. *Terry,* however, expressly refused to authorize this type of a general exploratory search for evidence of criminal activity.

Next, the *Schmitter* court considered whether Schmitter's consent was tainted by the preceding illegal search. Citing *United States v. Melendez-Garcia,* 28 F.3d 1046, 1053 (10th Cir. 1994), the *Schmitter* court stated that "when the consent to search is preceded by a Fourth Amendment violation, the State, in addition to proving the voluntariness of the consent, must also establish a break in the causal connection between the illegality and the evidence thereby obtained." 23 Kan. App. 2d at 556.

The *Schmitter* court held that where the request for consent was virtually simultaneous with the illegal pat-down search and there was no break in the activity between the pat-down search and the consent, the "consent was not voluntary as a matter of law, and the evidence should have been suppressed as fruit of the poisonous tree under *Wong Sun* [citation omitted]." 23 Kan. App. 2d at 557-58.

In this case, the State has not established any intervening circumstances which would serve to purge the taint of the illegal search. See also *State v. Wilson,* 30 Kan. App. 2d 100, 106-07, 39 P.3d 668, *rev. denied* 273 Kan. 1040 (2002) (The consent and illegal detention were too close in time for the consent to purge the taint of the illegal detention.). Therefore, the resulting statements and consent to search were not voluntarily given, and the evidence should have been suppressed. See *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Reversed and remanded with directions.