(171 P.3d 656)
No. 94,694

STATE OF KANSAS, *Appellee*, v. REGINALD T. WARREN, *Appellant.*

Opinion filed November 30, 2007.

*Carl Folsom, III,* of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Phill Kline,* district attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

HILL, J.: A police officer impounded Reginald T. Warren's car but did not arrest him. Before leaving the scene Warren asked to get some items from the car. Unsure of his safety, the officer searched the car first. A police officer may legally search an automobile for his own protection without a search warrant if the search is limited to those areas in which a weapon may be hidden. But here, the officer made an extensive search of the passenger compartment and trunk. Under the front seat of the car the officer found a day planner which he examined thoroughly and noted it may belong to someone other than Warren. In the backseat and trunk, he found stereo equipment. The officer reported these discoveries and, later, officers from a different city got a search warrant and recovered stolen property from the impounded car. The evidence from the car led to Warren's convictions for burglary, theft, and criminal damage to property. We hold the first search made by the officer impounding the car was not reasonable because it exceeded the area the officer needed to search for his protection. We reverse and remand.

We first review some general principles of the law of search and seizure. Following that, we examine the actions of the police officer and the defendant. Taking all of that into account, we decide the first search was unreasonable. We need not address other matters raised in the appeal since we are remanding for a new trial.

*The law lets an officer search for weapons for his or her protection.*

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable governmental searches and seizures. Any warrantless search is unreasonable unless it falls within an exception recognized in Kansas cases. See *State v. Ibarra,* 282 Kan. 530, 543, 147 P.3d 842 (2006). Currently, Kansas courts recognize nine exceptions: (1) consent; (2) search incident to lawful arrest; (3) stop and frisk (as explained by *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 [1968],) and investigatory stops, K.S.A. 22-2402; *State v. Moore,*

283 Kan. 344, 154 P.3d 1 (2007) (traffic stops); (4) probable cause accompanied by exigent circumstances; (5) emergency doctrine; (6) inventory searches; (7) plain view; (8) administrative searches of closely regulated businesses; and (9) plain feel. See *State v. Rupnick*, 280 Kan. 720, Syl. ¶ 2, 125 P.3d 541 (2005). Obviously, we focus on the stop and frisk or *Terry* exception in this case.

The *Terry* exception was the focus in *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983), where the United States Supreme Court stated that the "protection of police and others can justify protective [automobile] searches when police have a reasonable belief the suspect poses a danger." 463 U.S. at 1049. The *Terry* search must be conducted within the passenger compartment of the automobile and be "limited to those areas in which a weapon may be placed or hidden." *Long*, 463 U.S. at 1049.

But the preservation of evidence is not a permissible purpose of a *Terry* search of an automobile. See *State v. Epperson*, 237 Kan. 707, 715, 703 P.2d 761 (1985).

Warren raises the issue of whether the officer's search of the car exceeded the permissible scope of a search for weapons. The State argues that Warren is raising this issue for the first time on appeal. It is true that issues—even constitutional issues—not raised before the trial court cannot be raised on appeal. *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). But there are three exceptions to the general rule, according to *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005). First, the newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case. Second, consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights. Third, the district court is right for the wrong reason. We will continue and address this issue under the first two exceptions because there are no disputed facts, and consideration of the issue is necessary to prevent the denial of fundamental rights.

*The first search of the automobile was too extensive.*

On January 5, 2003, Roeland Park Police Officer Mike Weaver stopped a car for speeding on a residential street. Reginald T. Warren was the driver. At some point Warren got out of the car and

stood at its rear bumper. The record is not clear whether Warren freely decided to do this or whether the officer ordered him out of the car. The officer patted Warren down and found no weapons on him.

As with any traffic stop, the officer asked Warren for his driving license, proof of insurance, and car registration. Warren told the officer the car was not registered because he had recently bought it; however, he had no bill of sale to confirm his explanation. He also told the officer he did not have insurance. Instead of a driving license, Warren gave the officer a photocopy of an I.D.

Warren also told the officer the license plate on his car—a Ford Escort—actually belonged to a Dodge Spirit. When the officer asked for a computer records check on the tag, the results corroborated Warren's claim. The officer also asked for a records check on Warren himself. The records said that Warren had a suspended license; was on parole in Kansas for aggravated robbery, burglary, and theft; and had "a history of obstruction" and was "known to resist." Also, the dispatcher told the officer that Warren had an outstanding warrant from Jackson County, Missouri, for a misdemeanor probation violation. The dispatcher also stated the Jackson County authorities would not extradite Warren.

Officer Weaver decided to have the car towed. This decision to tow is at the officer's discretion because the Roeland Park Police Department did not have a written policy for impounding and searching towed vehicles. The officer said he decided to have the car towed because it was parked on a heavily-traveled residential street, Warren was unable to provide proof of insurance, the car was not registered, and Warren had a suspended driving license.

The officer told Warren his car would be towed. Warren asked the officer if he could get some of his belongings out of the car. Officer Weaver told Warren that he would search the car before he would allow Warren to remove anything from it. At the suppression hearing the officer stated the purpose of this search was to check for ownership of the car and any weapons that might be in it. The officer suspected that, because of Warren's criminal history, there might be weapons inside the car. The officer also said

his suspicions arose after Warren requested to get back into the car once he knew his car was going to be towed.

The officer searched the driver's area and found a day planner underneath the driver's seat. The day planner was black, about 8 to 10 inches long, and closed with a zipper. The officer opened the day planner and found a social security card, a checkbook, and a AAA card. Those three items had the name "Jason Toomsen" on them. When asked, Warren could not explain why those items were in his car. This lack of explanation caused the officer to search more of the car. The officer continued his search to the passenger area and then searched the trunk.

In the backseat of the car, the officer found speakers and electronic equipment. In the trunk, he found miscellaneous items which he thought might be stolen. But the officer did not verify whether the items were stolen. The car was towed to an impound yard in Lenexa.

Officer Weaver let Warren go after the car was removed. The officer never placed Warren under arrest. While at the scene and before having the car towed away, the officer did not receive any information that would show that Warren's car had been stolen or involved in committing a crime.

The police used the information from this search to link Warren to a burglary of a house in Merriam, Kansas, that had happened the day before. Subsequently, the Merriam police got a warrant to search Warren's car while it was still at the impoundment yard in Lenexa. The search of the car yielded stolen property and other evidence that was used in Warren's trial.

Here, Warren concedes the officer had valid reasons for performing a *Terry* search on the car. But Warren contends the officer's search exceeded the scope of a *Terry* search when he looked extensively through the day planner and searched the trunk of the car. Also, at the suppression hearing, the officer stated the purpose of this search was to check for ownership of the car and any weapons that might be in it. The State fails to address whether the officer's purpose in searching the car or the search itself exceeded the scope of a *Terry* search.

It is true the day planner could have contained a weapon, but it did not. And, the officer's search did not stop with checking for weapons in the book. Instead, without any probable cause, the officer continued to search through the planner thoroughly. He found a social security card, a checkbook, and a AAA card, all of which had one Jason Toomsen's name on them. (Toomsen had suffered a house burglary the day before.) When asked, Warren offered no explanation about the items or why they were in his car. This caused the officer to extend his search to the passenger area and then the trunk.

This search exceeded the legal limits of a *Terry* search, and the evidence gained from it must be suppressed. Neither party argues the inevitable discovery doctrine applies here, and we agree because of the lack of a written policy covering inventory searches of impounded cars and trucks by the Roeland Park Police Department. But Warren also argues that most of the State's evidence was the result or "fruit" of the officer's search of his car. Thus, he implies this court cannot "declare beyond a reasonable doubt that" the trial court's error in not suppressing the evidence "had little, if any, likelihood of having changed the result of the trial." See *State v. McClanahan*, 259 Kan. 86, 102, 910 P.2d 193 (1996). We agree; this error is not harmless.

We reverse and remand for a new trial with directions that all evidence arising from the first search of this car must be suppressed.

Reversed and remanded with directions.