(207 P.3d 1081)
No. 98,629

STATE OF KANSAS, *Appellee*, v. BERNARD EUGENE PRESTON, *Appellant.*

Petition for review granted April 2, 2010.

Opinion filed May 22, 2009.

*Christina M. Waugh,* of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Phill Kline,* district attorney, and *Stephen N. Six,* attorney general, for appellee.

Before HILL, P.J., ELLIOTT and LEBEN, JJ.

HILL, J.: This is a direct appeal by Bernard E. Preston from his drug convictions. Preston questions the legality of a car stop as well as the resulting searches of his person and car. In addition, Preston raises trial errors of admitting evidence of his refusal to consent to searching the car and allowing the State's attorney in closing argument to comment about that refusal. Also, Preston complains about the trial court admitting evidence of his prior drug conviction. Finally, he contends the trial court improperly imposed a higher sentence from the grid box without a jury determination of any sentencing aggravating factors. After reviewing the record on appeal, we must affirm.

*The facts reflect a car stop based on a suspicion raised by a dispatcher's report.*

While on patrol at 1:30 a.m. on September 3, 2005, Lenexa Police Detective Sergeant Dan Owsley received a radio report from the dispatcher that police had gone to the Overland Park Regional Medical Facility to look into an aggravated battery report. According to the report, the suspect had dropped the battery victim off at the hospital and then left the hospital on foot. Following up, Owsley drove to the area looking for a black male on foot.

Within a few minutes, the dispatcher told Det. Sgt. Owsley a person who might be heading to pick up the suspect was driving a Cadillac, Suburban, or Oldsmobile car. With this in mind, Owsley began looking for such cars. Within 5 minutes of hearing about the aggravated battery, Owsley saw a white Cadillac pull onto the street. A black male drove the Cadillac, and the officer noted a black female passenger. When the Cadillac passed Owsley, both

occupants of the car stared at him. Suspicious, Owsley began to follow the Cadillac.

Knowing that a driver in Kansas must, by law, signal a turn at least 100 feet before making a turn, Owsley noticed the driver of the Cadillac failed to give such a turn signal before the car turned. Using that seeming traffic violation as a pretext, Owsley stopped the car.

Owsley did say later that from the time he first saw the Cadillac he thought the occupant could be either the aggravated battery suspect or the person picking up the suspect. According to the officer, his purpose for stopping the car was to discover any possible involvement of the people in the Cadillac with the aggravated battery as well as the traffic violation.

*Not gaining consent to search the Cadillac, the detective searches the car and driver anyway.*

After the Cadillac pulled over, Owsley got out, approached the driver's door, got the driving license from the driver, and asked the occupants where they were going. The driver, Preston, said they were going to pick up a relative, but he could not give the relative's address and would not give the relative's name.

Detective Sergeant Owsley discovered from the computer that Preston was on federal supervision for a narcotic violation for a conviction for conspiracy to sell crack cocaine. Owsley found this information significant because he believed there must be substantial illegal involvement to be placed on federal supervision.

Turning his attention to the passenger, Owsley met Demicka Johnson, who also owned the car. When he asked her for permission to search, Johnson told Owsley he would have to ask Preston.

Pursuing the matter, Owsley went back to speak with Preston. Preston's phone was ringing "quite a bit." Owsley asked Preston to place the phone on the trunk of the car. At this time, Owsley saw a box of cigarillos containing loose tobacco on the backseat of the car. To Owsley, this suggested marijuana involvement because "people oftentimes hollow out the cigar, fill it with marijuana, and smoke it as a marijuana blunt."

Concerned for his safety, Owsley performed a pat-down search of Preston to make sure Preston did not have any weapons. Owsley did not feel any weapons on Preston's person but did feel a lump in his pocket. He believed the lump was money and asked if he could search the pocket to make sure that was all it was. Preston said he could. The officer discovered $2,500 in $100, $50, $20, and $10 increments. Owsley thought the amount was significant because Preston had told him he had been unemployed for 6 months. Also, in his experience, Owsley said people associated with narcotics sales often fold their money in such increments and most people do not have $2,500 in their pocket.

Based on many factors, Owsley wanted to search the Cadillac to ensure there were no weapons in the car. These factors included the aggravated battery report; the battery suspect in the area trying to find a ride; the report that a Cadillac was possibly picking up the suspect; Owsley's belief about Preston's involvement with the suspect; Owsley's experience that aggravated batteries often involve drugs; and the large amount of money held by Preston, a man who said he had been unemployed for some time.

During this weapons search of the Cadillac, Owsley smelled the odor of burned marijuana. From this odor, he believed there was marijuana in the car and began searching throughout the car for the source of the odor. Owsley thought the odor was coming from an ashtray, but he found no marijuana there.

Owsley called for a K-9 officer, and the rest of the car was searched by a canine. The canine showed a strong interest along the side of the front passenger seat. The officer conducted a second search of the car. This time the officers found cocaine and marijuana in an ashtray on the right rear passenger's door.

The State charged Preston with possession of cocaine with intent to sell contrary to K.S.A. 65-4107(b)(5), K.S.A. 65-4161(a), K.S.A. 21-4705, and K.S.A. 21-4708; possession of marijuana contrary to K.S.A. 65-4105(d)(16), K.S.A. 65-4162(a), and K.S.A. 21-4502(1)(a); and possession of more than 1 gram of cocaine with no Kansas drug stamp in violation of K.S.A. 79-5201 *et seq.*, K.S.A. 79-5208, K.S.A. 21-4704, and K.S.A. 21-4707.

*The defense fails to suppress evidence, and the jury convicts Preston.*

Before trial, Preston moved to suppress all evidence seized from the car. In his suppression motion, Preston argued the stop was unfounded and lacked probable cause. Preston argued Owsley lacked probable cause to continue questioning or searching him once he found out Preston was not the aggravated battery suspect.

In response, Owsley believed he had probable cause to search the Cadillac for nine reasons. *First,* the odor of burned marijuana in the car; *second,* in the early morning hours when there is little traffic, Preston was near where the aggravated battery suspect was thought to be; *third,* Owsley's belief that aggravated batteries are often associated with narcotics; *fourth,* the Cadillac fit the description of a car possibly on the way to pick up the suspect; *fifth,* the box of cigarillos with loose tobacco, typical of marijuana use; *sixth,* the narcotics' conviction on Preston's record; *seventh,* Preston's evasiveness about the relative he was picking up; *eighth,* Preston's ringing cell phone; and, *ninth,* the cash, the amount, the way it was sorted by denomination, and the way it was folded.

The district court denied Preston's motion, finding that Owsley saw Preston commit a traffic violation by failing to signal a turn as required by the statute. The court held that even though the traffic stop was a pretext, Owsley had reasonable suspicion for the stop. The court ruled Detective Sergeant Owsley had a basis to continue his investigation based on the appearance of narcotics activity. On the State's motion to clarify, the district court noted that Owsley first noticed the marijuana smell when he placed his head inside the car to conduct a protective sweep for firearms. The court went on to hold the smell provided probable cause to search the car. The jury convicted Preston on all charges.

*We look first at the car stop.*

Preston first argues the stop was an illegal seizure because there was no basis to believe he committed, was committing, or was about to commit a crime. In reply, the State contends Preston failed to preserve this issue because no objection was made when Owsley testified about the stop.

Generally when the defendant does not object at trial to evidence resulting from an allegedly illegal traffic stop, the issue is not preserved for appeal. *State v. Anderson*, 33 Kan. App. 2d 607, 609-610, 106 P.3d 89 (2005); see *State v. Saenz*, 271 Kan. 339, 349, 22 P.3d 151 (2001); K.S.A. 60-404. The defendant must object at trial even after a motion to suppress was made and denied. *State v. Holmes*, 278 Kan. 603, 610, 102 P.3d 406 (2004).

Even though Preston did not object at trial to testimony regarding the stop, Preston did object to the evidence resulting from the stop when he lodged a continuing objection to the search of the Cadillac. When a continuing objection is made, failure to object when the evidence is later admitted does not bar the defendant from raising the issue on appeal. *State v. Branning*, 271 Kan. 877, 880, 26 P.3d 673 (2001). We hold Preston preserved a challenge to the stop by objecting to the evidence seized from the stop and search. Therefore, we will proceed with our inquiry.

Preston contends the State failed to prove he violated K.S.A. 8-1548(b), the turn signal violation. In *State v. Greever*, 286 Kan. 124, 138, 183 P.3d 788 (2008), our Supreme Court ruled that a violation of K.S.A. 8-1548 is an absolute liability offense. The court explained that the plain language of the statute· provides that a vehicle must signal a turn continuously for at least 100 feet before making a turn. The court held that where the deputy testified he believed Greever violated the turn-signal statute and evidence indicated the deputy observed the violation, the deputy had probable cause and reasonable suspicion to stop Greever for violating the statute. 286 Kan. at 141. That roughly matches the testimony here.

Similarly, in *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1990), the court held that an officer has probable cause for a traffic stop when he observes a driver violate K.S.A. 8-1548. The court explained that this outcome is not dependent on whether any other vehicles are in the vicinity, stating, "K.S.A. 8-1548 requires a lane change signal within 100 feet of the point where the vehicle makes the lane change, regardless of whether there is any traffic moving in front of or behind the vehicle." 263 Kan. at 733.

Based upon *Greever* and *DeMarco*, evidence regarding when Preston made the decision to turn and evidence of whether his

signal adequately warned others of his intention to turn was unnecessary. All that was required was testimony that Owsley believed Preston violated the statute and evidence indicating Preston indeed failed to signal 100 feet before making a turn.

As we previously noted, Owsley stated the purpose of the stop was to determine involvement in the aggravated battery and due to an obvious traffic violation for not giving a turn signal 100 feet before making a turn. Owsley stated Preston turned his signal on just as he began the turn. Owsley therefore had a legitimate reason to stop Preston for violating K.S.A. 8-1548(b). The fact that Owsley admitted the turn-signal violation was a pretext is irrelevant. The court in *Greever* emphasized that when an officer articulates facts demonstrating probable cause to suspect a traffic violation, the seizure is valid even if pretextual. 286 Kan. at 140. We see no need to grant relief here.

*Preston failed to object to the pat-down search at trial; therefore, the issue is not preserved for us to decide.*

At trial, Owsley testified he conducted a pat-down search of Preston's person. Owsley testified he found a bulge in Preston's front pocket that was $2,500 in cash. Preston did not object to this testimony. Although Preston later raised a continuing objection when the State elicited testimony regarding the search of the vehicle, the evidence that Preston now complains about (*i.e.*, the $2,500 cash) resulted from the pat-down search, not from the search of the vehicle. Because Preston failed to object when Owsley testified regarding the evidence he obtained as a result of the pat-down search, he did not properly preserve this matter for appeal and we will not address the issue. *State v. Saenz*, 271 Kan. at 349.

Besides, during a stop, an officer is allowed to frisk a person for weapons if the officer reasonably suspects his or her personal safety requires it. *State v. Burton*, 37 Kan. App. 2d 916, 919, 159 P.3d 209 (2007) (citing K.S.A. 22-2402[2]; *State v. Hill*, 281 Kan. 136, 141, 130 P.3d 1 [2006]). Based on Owsley's testimony, it appears he was justified in conducting a pat-down search for weapons. Owsley twice articulated a concern for his safety. The fact that Owsley

believed Preston was involved in an aggravated battery alone supports the inference that Preston may have been armed or dangerous. Moreover, the fact that Owsley was aware Preston was on federal supervision for a narcotics violation supports the reasonable inference that Preston may have been armed.

*Next, we examine the concept of standing and both searches of the car.*

Preston argues that Owsley lacked probable cause to conduct the second search. At trial, Preston objected to the testimony regarding the initial search and was granted a continuing objection on this basis.

In response, the State contends that Preston cannot object to the search because he is not the owner of the Cadillac. The State reasons that since the actual owner, Johnson, was present, Preston has no standing. We note the State did not raise this issue before the district court. An issue of standing not raised before the district court is generally not considered for the first time on appeal. *State v. Delgado*, 36 Kan. App. 2d 653, 657, 143 P.3d 681 (2006).

Nonetheless, our Supreme Court in *State v. Boster*, 217 Kan. 618, 621, 539 P.2d 294 (1975), held that a driver who has actual possession and custody of a vehicle and apparent consent from the owner has a sufficient interest as possessor to justify a reasonable expectation of privacy and to assert his or her constitutional rights against unreasonable search and seizure. See also *State v. Sanders*, 5 Kan. App. 2d 189, 194-95, 614 P.2d 998 (1980) (held driver of vehicle operating with permission of owner has legitimate expectation of privacy in vehicle, which allows him to contest search).

It appears to us that the driver, Preston, was in control of the Cadillac, even though the car was registered to Johnson. Preston was the driver. Owsley testified he spoke to the passenger, Johnson, and asked her if he could search the vehicle; Johnson responded that it was her car but that Owsley would need to ask Preston if he could search. Preston did not give consent to search the vehicle. There is no evidence Johnson did not give Preston consent to drive her vehicle. In fact, Johnson essentially conferred standing upon Preston by telling Owsley he would need to ask Preston if he could

search. We hold that Preston had a sufficient possessory interest in the car to have standing to now challenge the search of Johnson's vehicle. We examine both searches.

*Weapons search*

Preston first argues the initial search for weapons was illegal because Owsley did not have a reasonable and articulable suspicion that Preston was dangerous and could gain immediate control of weapons. The findings of the district court are unclear in this regard. It appears to us the district court upheld the initial search as a protective search for weapons and the second search was properly based on probable cause due to the burned marijuana smell.

A warrantless search is unreasonable unless it falls within one of nine exceptions recognized in Kansas, including consent and stop and frisk/investigatory stops. *State v. Warren*, 38 Kan. App. 2d 697, 698-99, 171 P.3d 656 (2007). Here, it is clear that Preston did not give consent to search the vehicle. A search for weapons is one of those exceptions.

We look then at the exception for a search for weapons. In *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983), police officers stopped to investigate a car that had swerved into a ditch. The driver, Long, met the officers at the rear of the vehicle. When Long turned from the officers and walked toward an open door of the car, the officers followed him and saw a knife on the floor. The officers conducted a pat-down search of Long. While Long and an officer stood at the rear of the car, the other officer shined his flashlight into the car to search for weapons. The officer saw something under the armrest, knelt in the vehicle, lifted the armrest, and saw a pouch that contained marijuana. Long was then arrested and the vehicle was searched more thoroughly.

On appeal, the Court noted that investigative detentions involving vehicles are especially fraught with danger to officers. The Court held that a search of a vehicle's passenger compartment, limited to areas in which a weapon may be placed or hidden, is permissible if an officer has a reasonable belief based on specific and articulable facts that the suspect is dangerous and may gain immediate control of weapons. The Court further noted that if the

officer discovers contraband while conducting the search, he is not required to ignore it. 463 U.S. at 1050.

The Court in *Long* held the officers reasonably believed Long posed a danger under the facts of that case and rejected the lower court's belief that it was unreasonable to suspect Long could injure the officers because he was under their control and could not gain access to weapons in the vehicle. The Court reasoned that a suspect may break away from officer control and retrieve a weapon from the vehicle. Moreover, if the suspect is not arrested, he or she may be permitted to reenter the vehicle and have access to weapons. In their view, the officer is particularly vulnerable because an arrest has not been made. 463 U.S. at 1052.

The application of *Long* in this case is not affected by the recent ruling in *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009), which restricted searches for weapons in a car when the driver of the car has been handcuffed and placed in a police car. Here, Preston and his passenger at the time of the search were not arrested, not handcuffed, and both presumably would have been allowed to leave in the car had drugs not been found. Thus, officers still needed to make sure that neither Preston nor his passenger would have access to a weapon upon return to the car.

Turning to the facts of this case, we find several significant in deciding the reasonableness of this case. We note that Owsley stopped a car that matched the description of a vehicle that possibly contained persons involved in an aggravated battery. Owsley believed Preston was on federal supervision for a narcotics violation. Owsley conducted a pat-down search of Preston prior to the search of the vehicle to make sure everything was safe and that Preston did not have weapons on him. Just as Owsley was justified in conducting a pat-down search for weapons, Owsley was equally justified in conducting a protective search of the vehicle for weapons.

The specific and articulable facts caused Owsley to reasonably believe that Preston may have been dangerous or able to access weapons, especially since he wasn't under arrest. Preston was not in handcuffs just prior to the search. As the court in *Long* reasoned, either Preston or Johnson could have broken free from the officers'

control and retrieved a weapon from the vehicle. We hold this search for weapons was reasonable.

### Second search for contraband

Preston argues that because the illegal initial search provided probable cause for the second search, the cocaine and marijuana discovered as a result of the second search should be suppressed as "fruits of the poisonous tree." We are not persuaded so.

Based on the reasoning set out above, the initial search was a proper protective search for weapons. Owsley was therefore in a legitimate position to detect the smell of burned marijuana. In Kansas, the smell of marijuana detected by an experienced officer creates probable cause to support a warrantless search. *State v. MacDonald*, 253 Kan. 320, 325, 856 P.3d 116 (1993). Thus, Owsley lawfully conducted the second search in which cocaine and marijuana were discovered. We hold that both the search and seizure were reasonable.

*Preston's failing to object prevents us from examining the claim of error concerning the State's presentation of evidence.*

Next, Preston argues that testimony and comments regarding his refusal to consent to a search of the car violated his Fourth Amendment right to be free from unreasonable searches and his Fifth Amendment right against self-incrimination. Preston raises three instances in which the State referred to his refusal to consent to a search. This question of whether an individual's constitutional rights have been violated is a question of law over which this court has unlimited review. *McComb v. State*, 32 Kan. App. 2d 1037, 1041, 94 P.3d 715, *rev. denied* 278 Kan. 846 (2004).

Responding, the State points out that Preston failed to object at trial to the evidence and comments he now complains about. Indeed, our review of the record reveals that Preston only objected to the first comment made during closing argument of the State's attorney.

We list the three instances in which the State referred to Preston's refusal to consent to a search. *First*, during direct examination of Owsley, the State asked, "During your investigation of this case

that night, did anyone tell you, you could not search the car?" Owsley responded, "Just Mr. Preston." *Second,* the State explained in its initial closing argument that when determining whether Preston possessed cocaine, it must be determined that Preston had knowledge of the presence of a controlled substance with intent to exercise control over it. Concerning control, the State noted that Preston "was the only person in that car that refused to grant consent to search." When Preston objected to this statement, arguing it misstated the evidence, the district court responded that the jury would remember the evidence. *Third,* the State commented later in argument that Preston was in the right place at the right time to commit the crimes, noting he was the only person who did not want the officers to search the vehicle.

No published Kansas case appears to address whether there is a constitutional right to refuse consent to search such that the State may not elicit testimony or comment on the defendant's refusal. In our view, this case is analogous with cases dealing with evidence of post-arrest silence of the accused being admitted to prove guilt in violation of the ruling in *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). In *Doyle,* the United States Supreme Court held that a prosecutor's use of a defendant's post-arrest silence to impeach that defendant's credibility violates the Fifth and Fourteenth Amendments to the United States Constitution.

While dealing recently with an apparent *Doyle* violation, our Kansas Supreme Court in *State v. King,* 288 Kan. 333, Syl. ¶ 5, 204 P.3d 585 (2009), stated: "In accordance with the plain language of K.S.A. 60-404 [contemporaneous objection rule], evidentiary claims—including claims concerning questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection before those claims may be reviewed on appeal." The court explained:

"When a defendant raises an issue on appeal in the prosecutorial misconduct context that is truly an evidentiary question—that is, any claim relating to a prosecutor's questions or answers during direct or cross-examination, or any other claim relating to the admission or exclusion of evidence—the defendant's characterization of the issue cannot avoid the statutory requirement of K.S.A. 60-404

requiring a timely and specific objection at trial." Without objection, such claims are not preserved for appellate review. Syl ¶ 6.

The court went on to rule: "Alleged *Doyle* violations that occur during a prosecutor's questioning of a witness involve the improper admission of impeachment evidence; thus, appellate review of such conduct is subject to the contemporaneous-objection rule in K.S.A. 60-404." Syl. ¶ 7.

The contemporaneous-objection rule applies here. When the State asked the detective who said they could not search the car, the defendant did not object. We cannot then review the matter on appeal since the issue was not preserved by objection. The comments were mere repetition of these facts.

Going on, the two comments made in the prosecution's closing do not amount to misconduct. Our standard of review for such matters involves answering two questions. *First*, did prosecutorial misconduct take place? *Second*, if so, does the plain error require reversal? See *State v. Swinney*, 280 Kan. 768, 127 P.3d 261 (2006). Here the statements did not appear to be made with ill will or made to defame the defendant by calling him a liar. They were the simple repetition of unobjected-to testimony.

*We turn to the use of Preston's criminal record.*

Preston next argues the district court erred in admitting evidence of his conviction for conspiracy to possess with intent to distribute 50 grams or more of crack cocaine. He contends this evidence was improperly used for propensity purposes in violation of K.S.A. 60-455.

Prior to trial, the State sought to admit a certified journal entry of Preston's conviction. The State argued that whether Preston knowingly possessed cocaine and intended to sell or distribute it were central issues in the case. The court admitted the evidence because intent was at issue and there was another individual in the vehicle, making the question of possession relevant. The court noted that where intent is at issue and there are several individuals involved, the State may offer evidence of prior drug activity.

When considering such issues, jury instructions are crucial. Here, the jury was instructed, "Possession of a controlled substance

requires that the defendant have control over the substance with the knowledge of and the intent to have such control. To possess a controlled substance, the defendant must have knowledge of the presence of the controlled substance with the intent to exercise control over it." The jury was also instructed, "When a defendant is in nonexclusive possession of an automobile in which a controlled substance is found, it cannot be inferred that the defendant knowingly possessed the controlled substance unless there are other circumstances linking the defendant to the controlled substance." The court listed factors that could be considered in this regard, including the defendant's previous participation in the sale of a controlled substance. The jury was then instructed that evidence admitted tending to prove Preston committed crimes other than the present crime "may be considered solely for the purpose of proving the defendant's intent and knowledge."

At the start of trial, defense counsel renewed its objection to the K.S.A. 60-455 evidence. During direct examination by defense counsel, Preston admitted he pled guilty to possession of crack cocaine with intent to sell in 1997.

A controlling case on this point is *State v. Faulkner*, 220 Kan. 153, 154-55, 551 P.2d 1247 (1976). In *Faulkner*, the defendant was a passenger in a vehicle in which drugs were discovered. Faulkner was charged with possession of a controlled substance with intent to sell. The court noted that whether Faulkner had the intent required to prove possession was a material fact at issue. The court went on to hold that evidence of a prior conviction for possession of a controlled substance raised the reasonable inference that Faulkner was familiar with controlled substances and had knowledge of and intended to exercise control over the controlled substances in the present case. 220 Kan. at 157-58. The rationale of *Faulkner* has since been adopted by this court. See *State v. Graham*, 244 Kan. 194, 197, 768 P.2d 259 (1989); *State v. Hills*, 24 Kan. App. 2d 1, 9, 941 P.2d 404 (1997), *aff'd* 264 Kan. 437, 957 P.2d 496 (1998).

The rule in *Faulkner* controls here. Evidence of Preston's prior conviction was relevant to prove both knowledge and intent. The

jury was properly instructed. We find no error in the court's ruling on this point.

*Because a guidelines sentence was imposed, we have no jurisdiction to inquire further.*

Preston next argues the district court erred by sentencing him to the upper number in the sentencing guidelines box without proving the underlying aggravating facts to a jury. Preston relies on *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and *Cunningham v. California*, 549 U.S. 270, 166 L. Ed. 2d 856, 127 S. Ct. 856 (2007), to support his claim.

The district court sentenced Preston to the aggravated number within the sentencing guidelines box on counts one and three. K.S.A. 21-4721(c)(1) expressly forbids this court from reviewing a presumptive sentence. Our Supreme Court in *State v. Johnson*, 286 Kan. 824, 851, 190 P.3d 207 (2008), held that K.S.A. 21-4704(e)(1), which grants the judge discretion to sentence a defendant to any term within the presumptive grid block, is constitutional and does not violate either *Apprendi* or *Cunningham*. The court held that the appellate court is without jurisdiction to consider a challenge to a presumptive sentence even if the defendant is sentenced to the longest term in the presumptive grid block. 286 Kan. at 851-52. Thus, this court lacks jurisdiction to address Preston's claim.

Affirmed.