NOT DESIGNATED FOR PUBLICATION

No. 122,766

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GERAD CHANCE HERRERA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed October 8, 2021. Affirmed in part, reversed in part, and sentence vacated in part.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Alexander C. Driskell*, assistant county attorney, *Jeffery Ebel*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

PER CURIAM: Gerad Herrera challenges his convictions for five crimes, primarily arguing that incriminating evidence found during a pat-down search should have been suppressed before trial. We find the district court did not err when it denied Herrera's motion to suppress. We thus affirm three of his convictions—possession of methamphetamine with no tax stamp, possession of drug paraphernalia, and interference with law enforcement—but reverse his remaining convictions and vacate those sentences based on Kansas Supreme Court caselaw and the agreement of the parties.

1

In January 2019, Officer Michael Baker, a canine handler with the Salina Police Department, was on patrol in Salina when he passed a car being driven with an expired registration tag. Officer Baker confirmed the registration had expired and turned his patrol car around to stop the car. Before he caught up to it, the car parked on the side of the street. The car's driver and its passenger—later identified as Herrera—got out and began walking away. Officer Baker stopped and began collecting information from the driver. He then asked another officer to write a ticket so his dog could conduct a drug sniff around the car.

During the drug sniff, Officer Baker's dog alerted on the car's front passenger door. Officer Baker subsequently searched the car and, with her consent, the driver's purse, but he found nothing. He then began questioning Herrera.

Officer Baker asked if Herrera had anything illegal on him. Herrera indicated he had a knife on his belt, and Officer Baker escorted him to his patrol car to pat him down for weapons. Officer Baker removed two action figures sticking out of Herrera's jacket pockets, patted Herrera down, and asked him to empty his pockets. Herrera picked up the action figures and began placing his hand in his right pocket, which had a pocketknife clipped to the inside of it. After telling Herrera to stop, Officer Baker removed three knives—a fixed-blade knife sheathed on Herrera's belt, the pocketknife clipped inside his right pocket, and a third small pocketknife in his pocket—and continued the pat-down.

As he continued to search Herrera for weapons, Officer Baker felt the bulge of a plastic baggie in the coin pocket of Herrera's pants. Herrera told the officer the bulge was marijuana; he and Officer Baker both tried to reach for his pocket, resulting in a struggle. With the other officer's help, Officer Baker handcuffed Herrera and removed two baggies containing methamphetamine from Herrera's coin pocket. As a result of this encounter,

the State charged Herrera with possession of methamphetamine, possession of methamphetamine without a drug tax stamp (as neither baggie of methamphetamine had a drug tax stamp affixed), criminal possession of a weapon by a convicted felon, possession of drug paraphernalia, and interference with law enforcement.

Herrera filed a motion to suppress the evidence obtained through the search, arguing Officer Baker lacked probable cause to search him because the dog alerted on the car, not on him personally. The district court held an evidentiary hearing on the motion. At the hearing, Officer Baker testified about his actions throughout the stop, including his decision to search Herrera for weapons and his subsequent discovery of the bulge in Herrera's coin pocket. The officer explained that he felt a plastic bag in Herrera's coin pocket and believed it "[p]ossibly [contained] illegal drugs," noting that it is common to find plastic baggies containing drugs in coin pockets. The district court denied the motion, finding that Officer Baker had discovered the drugs during his pat-down of Herrera, which was justified to protect the safety of the officers.

The case against Herrera proceeded to trial. After hearing testimony, watching video footage of the interaction from Officer Baker's bodycam, and observing the knives, a jury convicted Herrera of all five charges. The district court imposed a controlling 54-month prison sentence, ordering the sentences for the weapon- and two methamphetamine-possession convictions to be served consecutively, and 12 months' postrelease supervision.

DISCUSSION

Herrera appeals, raising several legal and evidentiary challenges to his convictions. In its briefing, the State has conceded error in two respects—acknowledging that Herrera's methamphetamine and drug tax stamp convictions are multiplicitous, and that the Kansas Supreme Court has found the statutory clause giving rise to Herrera's

criminal possession of a weapon conviction is unconstitutionally vague. See *State v. Hensley*, 298 Kan. 422, 438, 313 P.3d 814 (2013) (multiplicity); *State v. Harris*, 311 Kan. 816, 824-26, 467 P.3d 504 (2020) (vagueness). Thus, the parties agree that Herrera's convictions for possession of methamphetamine and criminal possession of a weapon must be reversed, and those sentences must be vacated.

We are thus left to consider Herrera's challenges to his remaining three convictions: possession of methamphetamine without a drug tax stamp, possession of drug paraphernalia, and interference with law enforcement. In challenging these convictions, Herrera primarily argues that the district court erred when it denied his motion to suppress the evidence—that is, the baggies of methamphetamine—obtained during Officer Baker's pat-down search. He also argues that the court erred by not providing the jury with a limiting instruction regarding his previous felony conviction (which was introduced to prove an element of the criminal possession of a weapon charge). And he challenges the sufficiency of the evidence to support his convictions for possession of methamphetamine without a tax stamp and interference with law enforcement.

For the reasons explained below, we conclude the district court did not err when it denied Herrera's motion to suppress, as Officer Baker's pat-down search was reasonable and constitutionally permissible. We also find there is sufficient evidence in the record to support Herrera's convictions. And though the district court should have provided a limiting instruction regarding the use of Herrera's previous conviction, the absence of that instruction was not clear error that requires reversal. We thus affirm Herrera's three remaining convictions.

4

1. *The district court did not err when it denied Herrera's motion to suppress.*

Herrera first argues the district court erred when it denied his motion to suppress. Herrera challenges this ruling in two respects: He asserts that Officer Baker lacked probable cause to search him generally, and that Officer Baker exceeded the permissible scope of the pat-down search for weapons by reaching into his pockets. We do not find these arguments persuasive.

We review the factual underpinnings of a district court's decision on a motion to suppress evidence for substantial competent evidence and its ultimate legal conclusion de novo. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). When the material facts are not in dispute—as here—whether evidence should be suppressed is a question of law over which our review is unlimited. *State v. Stevenson*, 299 Kan. 53, 57-58, 321 P.3d 754 (2014). Although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress the evidence in question, the State has the burden to prove any challenged police conduct was permissible. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010).

Both provisions broadly prohibit *unreasonable* searches and seizures. See *State v. Christian*, 310 Kan. 229, 233-34, 445 P.3d 183 (2019). But they also "inferentially allow[] 'reasonable' ones." 310 Kan. at 234. Reasonable searches are executed under a valid warrant or justified by one of the recognized exceptions to the warrant requirement.

310 Kan. at 234. Two of these exceptions are relevant in this case: the stop-and-frisk exception and the plain-feel exception.

Under the stop-and-frisk exception, an officer conducting an investigative stop may pat down a person for weapons if the officer reasonably suspects doing so is necessary for the officer's safety. See K.S.A. 22-2402(1)-(2); *State v. Bannon*, 306 Kan. 886, 892, 398 P.3d 846 (2017). The need to conduct a limited search for weapons must be supported by more than a mere hunch; it requires a particularized and objective basis for the suspicion. See *State v. Pollman*, 286 Kan. 881, Syl. ¶ 4, 190 P.3d 234 (2008) (defining reasonable suspicion). And the officer's actions must conform to the limited purpose of the frisk. Accord *State v. Spagnola*, 295 Kan. 1098, 1106-07, 289 P.3d 68 (2012) (searching pockets exceeded scope of frisk because it was not directed toward confirming or dispelling officer-safety concerns).

The plain-feel exception applies when, during an otherwise lawful encounter, an officer inadvertently discovers evidence whose incriminating character is immediately apparent. *State v. Lee*, 283 Kan. 771, Syl. ¶ 6, 156 P.3d 1284 (2007). "'Immediately apparent'" requires probable cause to believe the discovered object is evidence of a crime. 283 Kan. at 779. Probable cause entails a reasonable belief, based on the officer's knowledge and the surrounding facts and circumstances, that the person being searched committed a specific crime. *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, Syl. ¶ 1, 242 P.3d 1179 (2010).

Neither party disputes that Officer Baker could lawfully conduct an investigatory stop. And given Herrera's admission that he had multiple knives, including a knife clipped to his pocket that the officer could observe, the parties agree Officer Baker had reasonable suspicion to pat down Herrera for weapons. But Herrera argues the officer lacked probable cause to continue searching him after finding the three knives. And he asserts that Officer Baker exceeded the bounds of the frisk when he asked Herrera if he

possessed anything illegal and by reaching into his pockets. The State asserts the plain-feel exception permitted Baker to seize the drugs.

To Herrera's first point, we disagree that Officer Baker's safety concerns dissipated when the officer found the three knives Herrera admitted to possessing. The Constitution did not require Officer Baker to accept Herrera's statements; rather, he was allowed to continue his pat-down search until his concerns were reasonably allayed.

Nor do we find the fact that Officer Baker removed two action figures that were sticking out of Herrera's jacket pockets invalidates the search. It is true that pat-down searches must generally be limited to outer clothing. See *Spagnola*, 295 Kan. at 1106-07. But Officer Baker's limited removal of those items, which was followed by Herrera's removal of the other contents of his jacket pockets, did not convert the weapons frisk into a search—particularly as one of the knives was clipped to the right pocket. This action was a reasonable effort to determine what other weapons, if any, Herrera had that might jeopardize the officers or others at the scene.

Herrera argues that Officer Baker transformed the pat-down into a general search for evidence when the officer asked Herrera if he possessed anything illegal, citing *State v. Burton*, 37 Kan. App. 2d 916, 159 P.3d 209 (2007). In *Burton*, a police officer conducting an unjustified frisk asked the defendant if he possessed anything illegal, resulting in the discovery of marijuana. The court held the drugs were inadmissible because the officer's question turned the weapon frisk into a general search for evidence. And a causal connection existed between the unlawful search and discovery of the marijuana, requiring its suppression. 37 Kan. App. 2d at 923.

The facts here are markedly different from *Burton*. Officer Baker asked Herrera if he possessed anything illegal while he was searching him for—and found several—weapons. In other words, Officer Baker asked his question not as part of a fishing

expedition unmoored to any constitutional justification, but with reasonable suspicion that justified the pat-down.

After reviewing the totality of the circumstances before us, we agree with the State that this case fits squarely within the plain-feel exception to the warrant requirement. Officer Baker was conducting a legal frisk for weapons when he felt a bulge in the coin pocket of Herrera's pants. The officer indicated that, in his experience, people often carry illegal drugs in baggies in their coin pockets, and the bulge felt like it matched this description. More importantly, Herrera informed the officer that the bulge was an illegal substance—marijuana. Though the baggies actually contained methamphetamine, Herrera's statement provided the necessary probable cause to search Herrera's coin pocket and remove the baggies.

The district court did not err by denying Herrera's motion to suppress.

2. *The evidence in the record is sufficient to support Herrera's convictions of possession of methamphetamine without a drug tax stamp and interference with law enforcement.*

Herrera also argues the evidence at trial was insufficient to support his convictions for possession of methamphetamine without a drug tax stamp and interference with law enforcement. He asserts that the record does not show that he *knowingly* possessed methamphetamine—the mental culpability required for the crime—because he told Officer Baker he had marijuana, not methamphetamine, in his pocket. And he asserts the State failed to show that he substantially interfered with the officers' duties. We find neither argument persuasive.

When a defendant challenges the sufficiency of the evidence, an appellate court reviews the evidence "in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt."

8

*State v. Rosa*, 304 Kan. 429, Syl. ¶ 1, 371 P.3d 915 (2016). The court does not reweigh the evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Keel*, 302 Kan. 560, 566, 357 P.3d 251 (2015). Instead, we examine all the evidence presented at trial—both direct and circumstantial—and any reasonable inferences that evidence yields to determine if there is evidence in the record supporting each element of the crimes charged. See *State v. Dobbs*, 297 Kan. 1225, 1238, 308 P.3d 1258 (2013).

Herrera first argues the evidence was insufficient to convict him of possession of methamphetamine without a drug tax stamp, as he did not *knowingly* possess that substance. It is true that Herrera informed Officer Baker that the substance in his coin pocket was marijuana, not methamphetamine. But that does not mean the jury had to believe this statement. To the contrary, there was ample evidence in the record to show Herrera knowingly possessed the methamphetamine. Most notably, Officer Baker found the methamphetamine in Herrera's pocket, and the jury could infer that Herrera knew what he was carrying. In short, evidence in the record supports the elements of the offense. See K.S.A. 2020 Supp. 21-5706(a); K.S.A. 79-5208.

The evidence was similarly sufficient to support Herrera's conviction of interference with law enforcement. Herrera argues there was no evidence that he substantially hindered Officer Baker in the execution of his duties. See *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017) (crime of interference with law enforcement requires a showing that the defendant "'substantially hindered or increased the burden of the officer in carrying out his official duty'"). Herrera asserts that when he reached into his pocket to retrieve the baggies, he was trying to help—not hinder—Officer Baker.

While Herrera points to one inference the jury could have drawn from these facts, it is by no means the only reasonable inference available. The jury could have also concluded that Herrera's actions—attempting to reach into his pocket against Officer Baker's instructions, resulting in a struggle with Officer Baker that required another

9

officer's assistance and eventually led to Herrera being handcuffed—substantially interfered with the officers' ability to conduct the investigation.

The evidence in the record was sufficient to support Herrera's convictions of possession of methamphetamine without a drug tax stamp and interference with law enforcement.

3. *Though a limiting instruction was warranted in this case, the absence of that instruction was not clear error.*

At trial, Herrera stipulated that he had a 2016 felony conviction—an element of the offense of criminal possession of a weapon (which we reverse based on the State's concession and the Kansas Supreme Court's intervening decision in *Harris*). But Herrera did not request, and the district court did not provide, a limiting instruction as to what the jury could, and could not, draw from that evidence. In his final argument on appeal, Herrera asserts the failure to provide a limiting instruction was a clear error that requires a new trial. Although we agree the instruction likely should have been provided, we do not find that this error requires reversal.

Appellate courts employ a multistep analysis when reviewing the omission of a jury instruction. This review includes two main components: error and reversibility. See *State v. Kleypas*, 305 Kan. 224, 301-02, 382 P.3d 373 (2016); *State v. Williams*, 295 Kan. 506, Syl. ¶ 1, 286 P.3d 195 (2012). A district court errs when it fails to provide an instruction that is both legally and factually appropriate. When a district court has committed an instructional error, appellate courts must determine whether that error requires reversal. 295 Kan. 506, Syl. ¶ 4. And our standard for reversibility varies depending on whether the challenging party requested the instruction at trial. See *Kleypas*, 305 Kan. at 302. When, as here, no request was made, the failure to provide the instruction is reversible only when it was clearly erroneous—that is, when the appellate

court is firmly convinced the jury would have reached a different conclusion if the instruction had been given. *Williams*, 295 Kan. 506, Syl. ¶ 5.

Herrera argues that a limiting instruction would have been legally and factually appropriate to constrain the jury's consideration of his previous conviction. And the State concedes that this is likely true, as the Kansas Supreme Court has often assumed, without deciding, that courts should provide a limiting instruction whenever evidence of a prior crime is admitted, even when that prior crime is an element of the current offense. See *State v. Chavez*, 310 Kan. 421, 436, 447 P.3d 364 (2019); *State v. Sims*, 308 Kan. 1488, 1505, 431 P.3d 288 (2018), *cert. denied* 140 S. Ct. 126 (2019). We are thus left to consider whether the omission of the instruction was clearly erroneous.

We conclude it was not. The evidence against Herrera in this case was strong. He was found with baggies of methamphetamine in the coin pocket of his pants. He informed the officers that he had drugs in his pocket (though he claimed it was marijuana, not methamphetamine) and struggled with the officers to prevent them from retrieving that evidence. This encounter was caught on video by way of an officer's bodycam, with the video shown to the jury. And though the district court did not provide a limiting instruction regarding Herrera's previous conviction, both attorneys in closing argument limited their brief discussions of that fact to the weapon charge. In short, after reviewing the record, we are firmly convinced the jury would not have reached a different verdict if the court had provided a limiting instruction.

We reverse Herrera's convictions for criminal possession of a weapon and possession of methamphetamine, and we vacate the sentences for those offenses. We affirm Herrera's convictions of possession of methamphetamine without a drug tax stamp, possession of drug paraphernalia, and interference with law enforcement.

Affirmed in part, reversed in part, and sentence vacated in part.