(106 P.3d 89)

No. 91,791

STATE OF KANSAS, *Appellee*, v. ERIC A. ANDERSON, *Appellant*.

Opinion filed February 18, 2005.

*James C. Heathman,* of Heathman Law Office, of Topeka, for appellant.

*Karen Wittman* and *Deborah Hughes,* assistant district attorneys, *Robert D. Hecht,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., GREENE and HILL, JJ.

GREENE, J.: Eric A. Anderson appeals his conviction by a jury for driving under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle, K.S.A. 2002 Supp. 8-1567(a)(3), arguing evidence should have been suppressed, insufficiency of evidence, and defects in the verdict or procedure employed to clarify the verdict. We reject the arguments of failure

to suppress and insufficient evidence, but we conclude that the district court erred in connection with the verdict form and in questioning the jury to clarify the verdict, and for this reason we reverse and remand for a new trial.

*Factual and Procedural Overview*

After he left work at approximately 1:15 a.m. on February 21, 2003, Anderson visited a bar in Topeka, stayed for 30 minutes, and claims to have consumed only one beer. When an officer pulled into the parking lot at this location around 1:45 a.m., he observed Anderson sitting in his truck with the headlights off, and then observed Anderson drive across the parking lot at what he believed to be a high rate of speed. The officer followed Anderson and observed him appropriately signal, change lanes, and stop at a red light. When he turned right at a nearby intersection, Anderson made a wide right turn that invaded the oncoming left lane. The officer then stopped Anderson for making an improper right turn.

When the officer approached and asked Anderson for his license, Anderson had no trouble getting his license out, but the officer observed that his eyes were bloodshot, his speech was slurred, and the interior of the truck smelled like alcoholic beverage. The officer asked Anderson to exit and walk to the back of the truck, and Anderson had no trouble doing so. The officer administered field sobriety tests. Anderson failed the horizontal gaze nystagmus test because he would not keep his head still despite being told to do so four times by the officer and did not seem to understand the instructions. Anderson failed the walk and turn test because he started to perform the test before the officer was done giving instructions, and during the test he did not stay on the line, lost his balance at one point, and allowed a 2- to 3-inch gap between his heel and toe. Anderson failed the one-leg stand because he pointed his foot toward the sky, had to put his foot down several times, and skipped the number 12 when counting.

After being arrested for DUI and waiving his *Miranda* rights, Anderson admitted to drinking one beer. A breath test indicated his blood alcohol concentration was .099, but testimony showed a potential discrepancy in the "paperwork" associated with this test.

Anderson was charged with felony DUI under K.S.A. 2002 Supp. 8-1567(f) based upon alternative charges. He was charged as either driving with blood alcohol of .08 or more in violation of 8-1567(a)(2), or driving under the influence to a degree that rendered him incapable of safely driving a vehicle in violation of 8-1567(a)(3). He was also charged with making an improper right turn in violation of K.S.A. 8-1545(a)(1).

Anderson filed a motion to suppress prior to trial, arguing the officer had no justification to stop him because he did not commit a traffic violation. He argued his right turn was not improper, because there were no lane markings present at the intersection showing a divided lane. The district court denied the motion, finding the officer had probable cause to stop because he had witnessed Anderson commit a traffic violation, albeit rather a rather "technical" one.

Prior to submission of the verdict forms to the jury, the prosecutor noticed that the form for one of the alternative charges did not fully specify the charge beyond "driving under the influence," and he agreed to revise the form accordingly. Apparently, the revision was never made, and the jury returned a verdict of not guilty on the charge of driving while having a blood alcohol concentration of .08 or more, guilty on the charge of improper right turn, and guilty of "driving under the influence." The district court noted that the verdicts were "inconsistent" and conducted an examination of the jury foreman in an attempt to clarify the verdicts. After becoming satisfied with this clarification, the district court polled the jury and accepted the guilty verdicts.

Anderson appeals.

*Did the District Court Err in Denying Anderson's Motion to Suppress Evidence?*

Anderson challenges the justification for the traffic stop, arguing that he was driving safely and did not commit a traffic violation. The State contends that Anderson committed an improper right turn, thus justifying the stop. The district court denied Anderson's motion to suppress, concluding that the stop was justified because "there was a technical violation."

Despite his argument in a motion to suppress and on appeal, Anderson did not object to the admission of the evidence resulting from the traffic stop at the jury trial. When the court has denied a motion to suppress evidence, the movant must object to the admission of that evidence at trial to preserve the issue for appeal. *State v. Gilbert*, 272 Kan. 209, 212, 32 P.3d 713 (2001). Anderson suggests no basis for being excused from the strict application of this rule, and we must reject his argument on appeal.

Even if we were to reach the merits of Anderson's argument, it has been substantially undermined by his conviction for an improper right turn. Indeed, even a "technical" traffic violation may support the reasonable suspicion of an officer that a crime has been committed, thus justifying a traffic stop. See K.S.A. 22-2402; *State v. Slater*, 267 Kan. 694, 696-97, 986 P.2d 1038 (1999); *State v. Field*, 252 Kan. 657, 659, 847 P.2d 1280 (1993).

We affirm the district court on this issue.

*Is Anderson's DUI conviction supported by Sufficient Evidence?*

Anderson argues that without evidence of unsafe driving, the fact that he admitted to drinking one beer is not enough to convict him of driving under the influence under 8-1567(a)(3). When a defendant challenges the sufficiency of evidence, this court's standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the State, the appellate court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

Anderson was convicted of violating 8-1567(a)(3), which provides, in pertinent part: "No person shall operate or attempt to operate any vehicle within this state while . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." Anderson left a bar around closing time, drove across the parking lot at 20-25 miles per hour, and committed a technical traffic offense in making a wide right turn. According to the officer, Anderson's eyes were bloodshot, his speech was slurred, he smelled of alcoholic beverage, and he failed each of the field sobriety tests. After a review of all the evidence in the light

most favorable to the State, a rational jury could have found the defendant guilty beyond a reasonable doubt.

*Did the District Court Err in Submission of a Defective Verdict Form or in Questioning the Jury to Clarify the Verdict of Guilty on the Alternate DUI Charge?*

Anderson next argues that irregularities in one of the verdict forms and the court's attempts to clarify this verdict through jury questioning deprived him of a fair trial. We agree.

The problem had its genesis in a verdict form proposed by the State on the alternative charge of driving under the influence to the extent that it renders a person incapable of driving safely. In proposing the forms, the prosecutor stated:

"I did check the verdict forms. There is clearly a .08 one, and then I had the Court's administrator add that to a degree that renders him incapable of safely driving because that mirrors the alternative charge."

The defense attorney then indicated that he had no objection to the verdict form "as amended by the State."

Unfortunately, and for reasons not fully explained in the record, the additional language for the alternative charge was never added to the verdict form, and it simply offered the jury a choice of finding "the defendant not guilty" or "the defendant guilty of driving under the influence of alcohol," without adding the language "to the extent that renders him incapable of safely driving." The defective form was returned by the jury marked with an "X" before the language finding guilt. When the court noticed that the form had not been revised as agreed, it asked counsel to approach and stated in part:

"The verdict forms on the DUI show a guilty of ordinary DUI, and a not guilty of driving with .08. And my judgment is that the guilty verdict is the valid verdict, and there is a minor glitch in that we should have—I should have—I'll accept responsibility—I should have said—I did say find the defendant guilty of one or the other but not both. So, that cures it.

"Does the defendant have any comment?

"MR. HEATHMAN: Let me take a look. Yes, my comment is that the verdicts do appear to be inconsistent. If it's an inconsistent verdict, I think the law would require that we enter the lesser verdict in the case, and I would ask the Court to enter a not guilty.

"MS. WITTMAN: Judge, I would also note—I don't agree with that, but the verdict form that I had requested and I believe we agreed to it, should have read driving under the influence to the extent they were impaired, and that was never given to the jury. I believe that they followed the instructions. They can't find him guilty of both offenses in terms of an alternate, and I think that's what they're trying to accomplish here. But, I clearly don't know.

"MR. HEATHMAN: I don't think this particular form is the one I had, unless I have a different version.

"MS. WITTMAN: My request was that it say to the extent that he was impaired to operate a vehicle, and I think we all agreed to that. That's not what was given to them, and you did not read the verdict forms.

"MR. HEATHMAN: If that's not what it says, and that's what we agreed to, then we have an error in the verdict form.

"THE COURT: Okay. Our choice—my judgment would be that the choice is to let the jury go, and hassle this out as a matter of law, or make inquiry of the jury. Wait, wait, wait. Inquiry of the jury is an extremely hazardous undertaking, and I never do it. I have never done it in 30 years, so I'm very reluctant to do that. But, if a strong case is made for making additional inquiry to the jury, I'll do it. Go ahead."

Counsel then discussed the alternatives and the problems envisioned by each, and defense counsel clearly objected to the court's inquiry of the jury. Despite this objection and the court's stated reluctance, the court then addressed the jury as follows:

"Okay. What did we say? All forms of human endeavor can be susceptible to glitches. In the judgment of the Court and the attorneys, your verdict in regard to driving under the influence of alcohol, guilty, and operating a vehicle having a blood alcohol concentration of .08 or more is inconsistent. Okay. Now, that's not bad, I'm not criticizing the jury for the verdict.

"Ms. Sonnier, can you tell us—and if you can fine, if you can't, that's okay too—can you tell us which of the theories of DUI the verdict applies to?

"MS. SONNIER: The testimony of the officer, the sobriety tests that were given out in the field, and that's what we went by.

"THE COURT: The condition of the defendant?

"MS. SONNIER: Yes.

"THE COURT: Again, I'm leading, but I need to. The impairment of the defendant?

"MS. SONNIER: Yes.

"THE COURT: And, again, in your judgment and judgment of all of the jurors, you, I guess, at the suggestion of Mr. Heathman ignored the breath alcohol test, the .08?

"MS. SONNIER: Yes, we had a problem with basically paperwork—

"THE COURT: Okay.

"MS. SONNIER: —that was given.

"THE COURT: Okay I will accept—

"MR. HEATHMAN: I would ask that we poll the jury.

"THE COURT: We will be polling the jury, Mr. Heathman. Thank you.

"I will accept the jury's verdict, make a finding that the defendant is guilty of driving under the influence of alcohol, and operating a vehicle while having a blood alcohol concentration of .08 or more, and regard the—no back up. Find the defendant guilty of driving under the influence of alcohol, and of making an improper right turn, and regard the other verdict of not guilty as surplusage.

"Okay. Ladies and gentlemen, we will be asking you individually if this is your verdict, and that's called polling the jury. But for your purposes, your answer is either 'yes' or 'no.' "

The jurors then unanimously responded with "yes" as polled.

The State argues that the verdicts were not "inconsistent" but merely "ambiguous." Unfortunately, the State cites no authority addressing the appropriate remedy for an "ambiguous" verdict, and conceded in oral argument that the "better practice" is for the court to allow the jury itself to retire and resolve the problem with new instructions. Indeed, we see no reason here why the court could not have simply informed the jury that it had inadvertently received defective verdict forms and then sent the jury back to consider new and properly revised forms.

We are aware of Kansas cases that do not require reversal where there appear certain inconsistencies in verdicts. See, *e.g., State v. Beach*, 275 Kan. 603, 616, 67 P.3d 121 (2003). Apparent inconsistency can be often be resolved by interpreting a verdict by reference to the information, to the court's instructions, and to the record, and mere surplusage may be disregarded. See, *e.g., State v. Taylor*, 212 Kan. 780, 784, 512 P.2d 449 (1973). Such case authority is not controlling, however, where a clearly defective verdict form has been submitted inadvertently by the court and the attempted resolution of the defect is by leading and suggestive questioning by the court.

K.S.A. 22-3421 provides that "[i]f the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged." The manner of seeking such assent has not frequently been addressed by our appellate courts, but it is clear that the jury can be sent back to reconsider and correct its

verdict. See, *e.g.*, *State v. Seidel,* 113 Kan. 390, 214 Pac. 565 (1923). When the court seeks such assent through remarks to the jury, it may not suggest a preference or persuade the jurors toward one or another of possible verdicts. See *State v. Culbertson,* 214 Kan. 884, 887, 522 P.2d 391 (1974). Moreover, such jury assent may not be procured by leading and suggestive questioning by the court. See 23A C.J.S., Criminal Law § 1180. In any event, we agree with the Supreme Court in Missouri, which has stated that whenever possible, the jury should be allowed to resolve the problem by resubmission on written instructions. *State v. Peters,* 855 S.W.2d 345, 348 (Mo. 1993).

Here the irregularities in the verdict ultimately accepted by the court were compound; the verdict form was defective in failing to clearly state the alternative charge in order that it be distinguished from the primary charge; the defective form was submitted to the jury absent revision after both counsel noted a need for such revision; the court's questioning of the foreman was admitted by the court to be leading and suggestive; the responses of the jury foreman did not serve to clarify the verdict with any degree of certainty; the ultimate polling of the jurors was contaminated by the court's unfortunate misstatements that attempted to—but did not—clarify the defective verdict. Under these circumstances, we cannot conclude that Anderson received a fair trial and we must remand for a new trial on the DUI charge.

Anderson's conviction of improper right turn has not been challenged on appeal and is affirmed. The conviction for DUI is reversed and the case is remanded for new trial or further proceedings not inconsistent with this opinion.