NOT DESIGNATED FOR PUBLICATION

No. 115,817

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON ROBERT BROWN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cowley District Court; JAMES T. PRINGLE, judge. Opinion filed November 3, 2017. Affirmed in part, vacated in part, and remanded.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Ian T. Otte*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MCANANY and ATCHESON, JJ.

PER CURIAM: Courts have to treat completed jury verdict forms in a criminal case as saying what they mean and meaning what they say. The Cowley County District Court didn't do that in this case. According to the verdict form, the jurors convicted Aaron Robert Brown of attempted involuntary manslaughter, even though they had not been instructed on such a crime. Nobody noticed the discrepancy when the verdict was announced and the jurors were polled at the end of the trial. At sentencing, the district court presumed to correct the verdict to one for attempted voluntary manslaughter and punished Brown for that crime. But courts cannot take it upon themselves to unilaterally

1

fix ostensibly errant verdicts. We find the district court's revisionism to be reversible error and, therefore, remand for a new trial on attempted voluntary manslaughter.

Brown has also challenged his convictions for criminal possession of a firearm and aggravated assault. We find no error in those convictions and affirm them.

FACTUAL AND PROCEDURAL BACKGROUND

Given the issues on appeal, we may sketch the background facts briefly. Brown attended a celebratory party on April 18, 2015, that followed a wedding. Brown came and left at least a couple of times during the evening and appeared to be drinking heavily. Many of the partygoers marked the occasion with alcoholic beverages. As the time slipped past midnight, Brown said he didn't feel well and got up to leave.

Robert Lolar, another guest, then chose to declare rather randomly that he could "beat up anybody in the house." Brown, for some reason, felt obliged to respond: He pronounced that although he was too old to fight, he didn't need to because he had a gun. Unable to let things pass, Lolar pointedly replied, "Well, you got to get to it first." Brown, who had been walking away, drew a pistol from his waistband and turned, gun in hand, toward Lolar. Brown, equally pointedly, said, "I'll fight with this." And he warned Lolar not to take another step toward him. Gene Jordan, another party guest, told Brown, "[D]on't do it."

According to Brown, Lolar moved toward him. So in what he characterized as an effort to defend himself from Lolar's attack, Brown fired his pistol repeatedly. Lolar was shot eight times but survived. Later, Brown asserted that he never intended to kill Lolar and simply wanted to repel his attack. Lolar countered that he did not advance on Brown and simply looked at him.

2

During the trial, Jordan testified that he was standing in the vicinity of Lolar when Brown started shooting. Jordan told the jurors that after freezing momentarily, he ran for cover, fearful of being shot. But Jordan also said he didn't think Brown was shooting at him and he didn't feel personally threatened.

At the close of the trial evidence, the district court instructed the jurors on attempted intentional second-degree murder of Lolar with a lesser included offense instruction for attempted voluntary manslaughter based on imperfect self-defense. The district court instructed on aggravated assault as to Jordan and on Brown's unlawful possession of a firearm as a convicted felon. The district court also instructed the jurors on the law regarding self-defense.

On the verdict form, the jurors found Brown guilty of the unlawful possession and aggravated assault charges. The verdict form identified the lesser included offense of attempted second-degree murder as "attempted *involuntary* manslaughter" and identified by number the jury instruction on attempted voluntary manslaughter. The jurors indicated they found Brown guilty of attempted involuntary manslaughter. The verdict was read in open court as a conviction for attempted involuntary manslaughter. The jurors were then polled, and each juror averred that the verdicts as read were his or her verdicts. The district court then accepted the verdicts and discharged the jury. At the time, nobody raised the discrepancy between the verdict on the shooting of Lolar as published and what had been included in the instructions.

In a posttrial motion, Brown argued that the jury's verdict constituted an acquittal of the attempted second-degree murder charge and the lesser crime of attempted voluntary manslaughter. The district court took up the issue at the sentencing hearing and determined the jury's verdict as stated on the verdict form amounted to a correctable mistake. The district court reasoned that "it's clear that it was the jury's intention . . . [to] return a verdict of guilty . . . to [*sic*] attempted voluntary manslaughter."

3

The district court sentenced Brown to 120 months in prison for attempted voluntary manslaughter, reflecting a standard guidelines punishment. Brown received a concurrent prison term of 12 months for the aggravated assault conviction and a consecutive prison term of 8 months for the firearms possession conviction. The district court also placed Brown on postrelease supervision for 24 months and ordered he pay a substantial amount of restitution. Brown has timely appealed.

LEGAL ANALYSIS

*District Court Erred in Revising Verdict Form*

We first take up Brown's challenge to his conviction for attempted voluntary manslaughter notwithstanding the jury's verdict, as reflected on the verdict form and in the poll of the jurors, for attempted involuntary manslaughter. On appeal, Brown says the district court had no authority to revise the jury verdict during the sentencing hearing, thereby altering the stated crime of conviction. We agree with Brown that the district court erred, although we part ways with Brown as to the appropriate remedy. Brown says he should be acquitted of any charges arising from the shooting of Lolar or, in the alternative, he should be found guilty of attempted involuntary manslaughter, consistent with the verdict form. As we explain, neither the district court's revised conviction nor the jury's verdict can stand, so Brown should receive a new trial on a charge of attempted voluntary manslaughter.

The issue presents a question of law insofar as the circumstances bearing on the verdict form, the receipt of the verdict, and the district court's resolution of the conflict between the stated verdict, on the one hand, and the charge and the instructions, on the other, are undisputed. We, therefore, owe no particular deference to the way the district court resolved the problem. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010)

4

(appellate court exercises unlimited review over question of law); *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (when material facts undisputed, issue presents question of law), *rev. denied* 303 Kan. 1079 (2015).

At the start of civil and criminal cases, jurors typically take an oath "to try the case conscientiously and [to] return a verdict according to the law and the evidence." K.S.A. 2016 Supp. 60-247(d). This case was no exception. Having heard the evidence and considered the law, the jurors then speak through their written verdict as the culmination of their sworn duty. Especially in criminal cases, the courts have only carefully circumscribed authority to reject verdicts and even less latitude to revise or correct verdicts.

A district court, for example, may set aside a guilty verdict if the evidence fails to support it or errors during the trial deprived the defendant of a fair hearing. See K.S.A. 22-3419 (district court may enter judgment of acquittal following jury verdict if evidence legally insufficient to convict); K.S.A. 2016 Supp. 22-3501(1) (district court may grant defendant new trial "if required in the interest of justice"). But a district court has no authority to set aside a not guilty verdict even if that result seems to contravene the evidence and the law and appears to be explicable only as an exercise of the jury's power of nullification. See *State v. McClanahan*, 212 Kan. 208, 212-13, 510 P.2d 153 (1973) (outlining doctrine of jury nullification). Here, however, we do not face a problem in measuring a verdict against the strength of the evidence or the overall fairness of a trial.

The problem is with the verdict form itself and the jury's resulting determination of the charge related to the shooting of Lolar. How to categorize the defect—as a technical flaw or as something more—isn't entirely obvious. Whether the problem is classified as one of formality or one of substance, the district court could not have purported to fix it after the jury had been discharged. Any corrective steps required the

5

involvement and assent of the jury, thus preserving the primacy of juries as decision-makers on the guilt of the accused in criminal cases.

In K.S.A. 22-3421, the legislature has provided that a district court may correct a verdict "defective in form only . . . with the assent of the jury, before it is discharged." Kansas appellate authority is sparse on what constitutes a correctable defect covered by K.S.A. 22-3421. In *State v. Anderson*, 33 Kan. App. 2d 607, 613-14, 106 P.3d 89 (2005), the court applied K.S.A. 22-3421 when the defendant was charged in the alternative with driving under the influence based on the inability to operate a motor vehicle safely and for having a blood-alcohol level of .08 or more. The jury was instructed on those alternatives. The verdict form, however, simply offered the jury the choice of finding the defendant not guilty or "guilty of driving under the influence of alcohol." 33 Kan. App. 2d at 611. After the jury returned a guilty verdict, the district court and the lawyers concluded the verdict form was defective for failing to delineate the alternative DUI theories and to include all of the requisite elements of impaired driving. This court held that the district court's inquiry of the presiding juror as to the basis for the verdict failed to correct the defect and the immediate poll of the jurors did not amount to assent to the "correction" of the defective verdict form. The district court should have informed the jurors of the problem in a general way, provided them with a proper verdict form, and had them resume deliberations. This court reversed the defendant's conviction and ordered a new trial. 33 Kan. App. 2d at 614.

More recently, the Kansas Supreme Court considered what to do when a jury completed the verdict form indicating it found the defendant guilty of both the charged crime and a lesser included attempt of the same crime—contrary to the directions on the form. *State v. Hernandez*, 294 Kan. 200, 202-07, 273 P.3d 774 (2012). After consulting with the lawyers and opting to follow the State's suggestion, the district court decided the problem could be resolved at sentencing and discharged the jury without taking any additional action. On appeal, the court characterized the defect as one of "inconsistent

verdicts" in the sense the two guilty findings were legally incompatible and left the jury's intent and conclusion ambiguous. The court analyzed the issue without applying or even referring to K.S.A. 22-3421, suggesting the problem tilted more toward a substantive flaw than a defect in form. The court recognized the conflict could not have been resolved in fashioning a sentence because there was no reasoned way at that point to sort out whether the jury meant to say the defendant committed the completed crime or an attempt—each of which carried a different guidelines sentence. The court pointed out the discrepancy could have been resolved only by providing the jurors with an explanation of the problems, new verdict forms, and a directive to resume deliberations. 294 Kan. at 205. The court concluded the defendant's conviction for the completed offense had to be reversed and the case remanded for a new trial. 294 Kan. at 207.

Here, assuming the conflict between the crime the jury considered and agreed upon in the verdict form and the crimes submitted in the instructions amounts to a defect in form covered by K.S.A. 22-3421, the district court should have acted when the jury returned its verdicts. The district court presumably would have informed the jury of the problem with the verdict form, provided a revised verdict form with the correct lesser included offense of attempted voluntary manslaughter, and permitted the jury to resume deliberations on that charge.

Among the reasons for orally announcing the jury's verdict and then asking or polling the jurors individually if they agreed to the announced verdict is to catch errors like the one here. (The process also more broadly promotes a criminal defendant's rights to a public trial and to a unanimous verdict.) Despite those safeguards, neither the district court nor the lawyers caught the problem with the verdict before the jury was discharged. The Kansas Code of Criminal Procedure provides no alternative way of correcting a defect in the form of a verdict.

If the result here doesn't fit within K.S.A. 22-3421 as a defect in form, then it is something more. The problem, of course, doesn't exactly replicate the ones in *Anderson* and *Hernandez*, but they are all of a kind. The verdicts the juries returned didn't correspond to the legal options outlined in the instructions. And those disconnects tended to obscure just what the juries may have intended. Just as importantly, whether the problem be one of form as in *Anderson* or something more substantive as in *Hernandez*, the solution seems clear:  The district court should explain the confusion to the jurors; provide additional instructions and revised verdict forms, as necessary; and allow the jurors to resume deliberations. Equally clear, however, the district court may not discharge the jury and later attempt to interpolate what the jury's intended result must have been.

The district court should not have (and really could not have) presumed to revise or correct the jury's verdict to change the stated guilty verdict for attempted involuntary manslaughter to one of guilty of attempted voluntary manslaughter. That approach cannot be squared with *Anderson* and *Hernandez*. And it moves perilously toward the entry of a directed verdict of guilty—something forbidden in criminal cases as inconsistent with constitutional due process and the right to jury trial. See *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). In sum, the district court erred in unilaterally and substantively altering what the jury stated on its verdict form long after the jury had been discharged.

Another panel of this court came to a different conclusion on similar facts in *State v. Rice*, No. 103,223, 2011 WL 4031494, at *15 (Kan. App. 2011) (unpublished opinion), a decision upon which the district court relied heavily. In that case, Rice was charged with and the jury was instructed on various sex crimes including *aggravated* indecent liberties with a child. As to that charge, however, the verdict form omitted the word "aggravated" from the description of the crime, so the jury returned a verdict convicting Rice of indecent liberties with a child. The mistake went unnoticed until after the jury had

8

been discharged, as happened here. The district court later found the jury could only have meant to convict Rice of aggravated indecent liberties with a child and sentenced him accordingly.

On appeal, the panel effectively held there was nothing amiss with the verdict form. The panel said K.S.A. 22-3421 didn't apply because the presiding juror signed and dated the form and it clearly showed the jury found Rice guilty, albeit of a crime other than the one covered in the instructions. The conflict between the verdict as rendered and the charges and instructions didn't trouble the panel, since all of the discussion during trial related to aggravated indecent liberties. So the panel considered the verdict form to be no different—legally, practically, or (apparently) upon visual inspection—from one identifying the crime as aggravated indecent liberties. In turn, there was nothing to correct and revise, and the district court could sentence Rice for aggravated indecent liberties, even though the verdict form pronounced guilt of a different crime. 2011 WL 4031494, at *12-15.

As our discussion to this point suggests, we disagree. We don't believe a district court or an appellate court can tamper with a completed verdict form to change the crime of conviction no matter how obvious the purported error by the jury might be. The prerogative to revise belongs to the jury and expires when the jury has been discharged. At that point, the judicial corrective is limited to a new trial.

There may be some "problems" with verdict forms that do not require any fix in certain circumstances. For example, a transposition of letters in a word creating an obvious typographical error doesn't demand judicial concern or attention. We suppose a failure to date the form may not be a defect at all when the verdict is read into the record, thereby establishing the date it was rendered. We similarly suppose the failure of the presiding juror to sign the verdict form might be excused where the jurors have been polled and each of them acknowledges on the record his or her agreement with the

9

verdict. And courts customarily treat as surplusage notes a jury may add to a verdict form, such as a request for leniency in punishment. See *Rogers v. United States*, 422 U.S. 35, 38, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975). But reconciling a conflict between the actual crime of conviction in the verdict form and the crimes presented in the instructions is of an entirely different scope. Any judicial reconciliation after the jury has been discharged amounts to a guess. And however educated it might be, it remains nothing more than a guess. That's not acceptable given the fundamental importance the criminal justice process attaches to jury trials and their results. See *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) ("[W]e believe that trial by jury in criminal cases is fundamental to the American scheme of justice[.]"); *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012) (characterizing criminal defendant's right to jury trial as "fundamental").

Consistent with *Anderson* and *Hernandez*, the remedy here requires reversal of Brown's conviction for attempted involuntary manslaughter and a remand for a new trial on the charge of attempted voluntary manslaughter. In its verdict, the jury unequivocally acquitted Brown of attempted second-degree murder by considering and rendering a verdict on a lesser included offense, even though that verdict may be unclear as to the resulting crime of conviction. That is, given the instructions, the jury necessarily found a reasonable doubt as to Brown's guilt for attempted second-degree murder by reaching the lesser offense, so that much of its decision is clear and must be given legal effect. See K.S.A. 2016 Supp. 21-5110(e); *In re Berkowitz*, 3 Kan. App. 2d 726, Syl. ¶ 4, 602 P.2d 99 (1979).

We disagree with Brown's argument that he cannot be retried or, alternatively, should be sentenced for involuntary manslaughter. Although the verdict form muddled exactly what the jury intended to convict Brown of, the result plainly showed there were 12 votes to acquit him of attempted second-degree murder and 12 votes to convict him of something else. The jury did not intend to find him not guilty or it would have done so.

Nothing in the instructions or the verdict form inhibited that result. Directing a judgment of acquittal for Brown on appeal would afford him a gratuitous remedy under the circumstances.

There are at least two reasons the verdict as rendered should not be enforced. First, the jury was never instructed on the law pertaining to involuntary manslaughter and could not have rigorously considered or applied that law, rendering the verdict, at best, serendipitous at least from Brown's perspective. Appellate review generally ought to avoid bowing to serendipity as a principal reason for upholding an outcome that should be grounded in rational decision-making. Second, as we discuss next, the crime of attempted involuntary manslaughter based on a lawful act of self-defense done in an unlawful manner amounts to a legal impossibility. There is even less reason for upholding a conviction for a crime that doesn't exist.

*District Court Correctly Denied Instruction on Attempted Involuntary Manslaughter*

For the first time on appeal, Brown argues the district court should have given a jury instruction on attempted involuntary manslaughter as a lesser included offense to the charge of attempted second-degree murder of Lolar. Although we have reversed Brown's conviction, we take up this issue because it presumably would come up at any retrial. See *State v. Hurd*, 298 Kan. 555, 571, 316 P.3d 696 (2013). The argument here spins off Brown's claim of self-defense. He contends that the jury reasonably could have found he undertook a lawful act—self-defense—but performed the act in an unlawful manner by using excessive force, thereby making the shooting of Lolar an attempted involuntary manslaughter. See K.S.A. 2016 Supp. 21-5405(a)(4) ("Involuntary manslaughter is the killing of a human being committed . . . during the commission of a lawful act in an unlawful manner.").

11

As we have indicated, we find no error in the omission of such an instruction because the described crime does not exist in the way Brown has framed his argument. A district court should not instruct on nonexistent crimes as lesser included offenses. Cf. *State v. Franco*, 49 Kan. App. 2d 924, 932, 319 P.3d 551 (2014) (defendant not entitled to instruction on lesser included crime that is unconstitutional and, therefore, cannot result in a lawful conviction), *rev. denied* 301 Kan. 1049 (2015).

The Kansas Supreme Court has outlined a sequential process for analyzing purported errors resulting from the failure to give jury instructions. The reviewing court must examine: (1) reviewability considering preservation of the issue at trial and jurisdiction; (2) legal appropriateness of the instruction; (3) factual support in the evidence for the instruction; and (4) harmlessness of any actual error. *State v. Beltz*, 305 Kan. 773, 779-80, 388 P.3d 93 (2017). Even though Brown did not request the instruction in the district court, we have jurisdiction to consider the issue. Turning to the next step, we apply an unrestricted standard of review to legal appropriateness. 305 Kan. at 779. As we explain, Brown's request founders on that requirement, so we need not examine factual appropriateness. A defendant challenging the failure to give an instruction for the first time on appeal has to demonstrate clear error to obtain relief. *Franco*, 49 Kan. App. 2d at 928. But because the district court could not have erred in failing to give a legally inappropriate instruction, the fourth step is also superfluous to our disposition of the point.

As we have indicated, Brown premises his argument on that form of involuntary manslaughter that criminalizes "a lawful act [done] in an unlawful manner," the commission of which results in "the killing of a human being." K.S.A. 2016 Supp. 21-5405(a)(4). The completed crime of involuntary manslaughter does not require an intent to kill, unlike other degrees of criminal homicide; rather the defendant's actions must result in the death of another person. Because Lolar survived, the purported crime becomes an attempt.

12

Brown submits his lawful act was defending himself in response to Lolar's aggressive conduct at the party. And he says a jury could conclude that his repeated firing of the pistol amounted to excessive force, constituting "an unlawful manner" of defending himself. Brown's analysis fails to account for key legal principles governing attempts and self-defense. First, an attempt requires the defendant have the specific intent to commit the completed crime. K.S.A. 2016 Supp. 21-5301(a) (attempt requires "overt act" to carry out a crime by "person who *intends* to commit such crime" but fails in doing so) (emphasis added); *State v. Louis*, 305 Kan. 453, 460-61, 384 P.3d 1 (2016). Here, that would not be an intent to kill but an intent to act in self-defense in an unlawful manner by using too much force. Self-defense, however, requires an individual "reasonably believe[] that such use of force is necessary" to repel an imminent threat of bodily harm. K.S.A. 2016 Supp. 21-5222(a). The required statutory belief has subjective and objective components, meaning, first, the person must honestly believe he or she is in immediate danger necessitating the use of that degree of force against another person (subjective belief) and, second, an objectively reasonable person would also view the circumstances that way (objective belief). See *State v. Salary*, 301 Kan. 586, 593-94, 343 P.3d 1165 (2015); *State v. Andrew*, 301 Kan. 36, 45, 340 P.3d 476 (2014).

The confluence of those principles dooms Brown's argument about attempted involuntary manslaughter based on self-defense. To commit that crime, a defendant would have to intend to defend himself or herself in an unlawful way—by using excessive or unreasonable force under the circumstances. But if the defendant acts with that particular intent or state of mind, he or she could not honestly believe the degree of force to be reasonable and, thus, lawful. Such a state of mind necessarily must be incompatible with the lawful act of self-defense. By definition, a person using force he or she believes to be unwarranted cannot be acting in self-defense and, therefore, cannot be engaging in a lawful act within the scope of the involuntary manslaughter statute, whether applied to a completed crime or an attempt.

13

For that reason, Brown's argument for an instruction on attempted involuntary manslaughter in this case fails as a matter of law. The district court properly would have refused a request for such an instruction and, therefore, committed no error in failing to give one.

*Sufficient Evidence Supported Brown's Conviction for Aggravated Assault*

Brown contends his conviction for the aggravated assault of Jordan must be reversed because the State produced insufficient evidence that he knowingly caused Jordan to fear for his safety and that Jordan harbored such a fear. We reject the argument and find sufficient evidence to uphold the conviction.

In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing below, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). Our inquiry simply asks whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

On this charge, the State had to prove Brown "knowingly" placed Jordan "in reasonable apprehension of immediate bodily harm" and used a deadly weapon to do so. K.S.A. 2016 Supp. 21-5412(a) (defining assault); (b)(1) (aggravated assault requires deadly weapon). Relevant here, "knowingly" is a statutorily defined degree of mental culpability requiring a criminal defendant to be aware his or her "conduct is reasonably certain to cause" a proscribed result. K.S.A. 2016 Supp. 21-5202(i). For aggravated assault, the proscribed result is the victim's apprehension of bodily harm.

14

The evidence showed that Brown repeatedly fired his pistol at Lolar while the two faced each other in the dining room of a home where, despite the late hour, many guests remained at the wedding celebration. Jordan testified he was sitting at the dining room table when Brown began shooting. He said he ran out of the room as Brown continued to fire the pistol because he feared he might get shot. Jordan testified that he didn't believe Brown intended to shoot him, but he "was getting out of the way." Brown testified in his own defense and asserted he shot at Lolar to defend himself. Nothing in Brown's testimony suggested he intended to shoot anyone else.

Taken favorably to the State, the evidence supports the aggravated assault conviction. Brown fired multiple shots at Lolar in close quarters with Jordan and other people in the immediate vicinity. In that situation, Brown could have and should have expected Jordan and the others to be reasonably apprehensive or anxious that they might be hit by a poorly aimed shot. The crime did not require evidence that Brown meant to shoot anyone other than Lolar—only that he could be fairly certain his decision to repeatedly fire the handgun would cause Jordan to be worried for his own safety. The circumstances themselves fairly support that conclusion about Brown's state of mind. Direct evidence of a defendant's intent or state of mind is seldom available, and competent circumstantial evidence typically will be sufficient. *State v. Griffin*, 279 Kan. 634, 658, 112 P.3d 862 (2005); cf. *State v. Jefferson*, 297 Kan. 1151, 1167, 310 P.3d 331 (2013) (elements of even serious crimes can be proved through circumstantial evidence, and jurors may rely on logical inferences drawn from those circumstances).

The evidence, likewise, did not have to show Jordan thought Brown intended to injure him rather than Lolar. Jordan simply had to be reasonably apprehensive that he could get hurt. Both his conduct at the time in leaving the room as quickly as possible and his explanation to the jurors of his reaction to the situation supported that element of the crime. Sufficient evidence supported the aggravated assault of Jordan.

15

*Brown Invited Any Error in Instruction on Criminal Possession of Firearm*

Brown contends the jury instruction outlining the elements of criminal possession of a firearm by a convicted felon omitted part of one of those elements, thereby depriving him of a fair trial and a legally sufficient guilty verdict on that charge. We find the purported error was invited, since the instruction in that respect conformed to the jury instruction Brown requested the district court use to inform the jurors about what the State had to prove to convict him. As a general rule, we will not afford relief to a party for an invited error. *State v. Schreiner*, 46 Kan. App. 2d 778, 788, 264 P.3d 1033 (2011). In *Schreiner*, the court described the rule and its operation this way:

> "Parties cannot complain to an appellate court about their own conduct—or that of their lawyers—or about rulings or decisions they have asked a trial judge to make. If parties get what they ask for from district court judges, we will not reverse judgments against them even though they may think better of their requests on appeal." 46 Kan. App. 2d at 788.

That's what happened here, and we see no good reason to disregard the invited-error rule.

Basically, K.S.A. 2016 Supp. 21-6304 criminalizes the possession of firearms by persons convicted of felonies under certain circumstances. The circumstance applicable to Brown was his possession of a firearm when he committed the felony resulting in his previous conviction. See K.S.A. 2016 Supp. 21-6304(a)(1). The standard jury instruction for unlawful possession includes this element: "The defendant was found to be in possession of a firearm at the time of the prior crime." PIK Crim. 4th 63.040 (2014 Supp.).

Brown's trial lawyer, however, asked the district court to give an instruction that stated the element as "[t]he defendant had been convicted of a felony," and included an explanation that the jurors should "consider the convicted felon status of the defendant as

16

proven by agreement of the parties in the form of a written stipulation by the parties." The district court incorporated that language into the instruction given to the jurors and omitted the standard language about the defendant having a firearm during the predicate crime. The district court added language informing the jurors the stipulation pertained only to that element of the instruction and should not be considered for anything else. Brown did not object to the additional language.

The tailored instruction on criminal possession kept the jurors from learning both the precise felony Brown had been convicted of previously and that he carried a firearm when he committed the earlier felony. By omitting those facts, the restyled instruction presumably inured to Brown's benefit.

Regardless of the perceived advantage of the stipulation and the resulting jury instruction, that's what Brown asked for from the district court. And that's what he got. Consistent with the invited-error rule, he cannot on appeal now complain the district court blundered in giving the instruction. His point fails for that reason alone, so we dispense with determining whether the instruction was in fact erroneous.

*Cumulative Error*

As his final point, Brown argues that cumulative error deprived him of a fair trial, necessitating reversal of his convictions. Appellate courts will weigh the collective impact of trial errors and may grant relief if the overall result of the imperfections deprives the defendant of a fair hearing even when the errors considered individually could be treated as harmless. *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). An appellate court looks at the entire trial record to assess the aggregate effect of multiple trial errors. 301 Kan. at 168.

We have identified only a single mistake for purposes of considering cumulative error—the handling of the verdict for the shooting of Lolar. When only one error has been found, there can be no distinct or greater cumulative error. *State v. Foster*, 290 Kan. 696, 726, 233 P.3d 265 (2010).

Although we have declined to grant relief to Brown on the elements instruction for criminal possession of a firearm on the basis of invited error, we have simply assumed error on that point in arriving at our conclusion. But even with that assumption, we would not consider the instruction in assessing cumulative error precisely because any misstep by the district court had been invited. See *State v. Knight*, No. 105,092, 2012 WL 2325849, at *7 (Kan. App. 2012) (unpublished opinion) (appellate claim of cumulative error does not permit defendant "to resurrect lost errors—those waived, invited, or simply never raised in the district court").

*Conclusion*

Having reviewed Brown's claims of error, we reverse his conviction for attempted voluntary manslaughter, vacate that sentence, and remand for a new trial on that charge. In all other respects, we affirm the district court.